UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALAN LANGRON,<br>    Plaintiff, | CASE NO. 3:21-cv-1531 (MPS) |
| v. | |
| KONIECKO, et al.<br>    Defendants. | MAY 5, 2023 |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction**

The plaintiff, Alan Langron, filed this action against Department of Correction officials asserting claims for violation of his constitutional rights in connection with a strip search. The defendants have filed a motion for summary judgment on the ground that the plaintiff failed to exhaust his administrative remedies before commencing this action. Although two months have passed since the response deadline, the plaintiff has not responded to the motion for summary judgment. For the following reasons, the defendants' motion is granted.

**II.    Standard**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at

113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted).

### III. Facts[1]

On February 19, 2021, the plaintiff received a disciplinary report for Security Risk Group ("SRG") Affiliation and was moved to the Restrictive Housing Unit ("RHU"). Defs.' Local Rule 56(a)1 Statement, ECF No. 27-3, ¶¶ 4-5. Defendants Koniecko, Duggan, and Berube escorted the plaintiff to the RHU. *Id.* ¶ 6. Defendant York recorded the escort on a hand-held video camera. *Id.* ¶ 7.

---

[1] The facts are taken from the defendants' Local Rule 56(a)1 Statement and supporting exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3.
    Although the defendants informed the plaintiff of this requirement, *see* ECF No. 27-10, the plaintiff has not filed a Local Rule 56(a)2 Statement. Nor has he responded to the motion for summary judgment in any way. Accordingly, the defendants' statements that are supported by admissible evidence of record are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.").

The plaintiff was bought to a room and strip-searched by defendants Koniecko, Duggan, and Berube.  *Id.* ¶ 8.  Defendant York was not in the room while the search was being conducted.  *Id.* ¶ 9.  Instead, she filmed the search through a window about five feet from the plaintiff.  *Id.* ¶ 10.

The plaintiff was confined at Corrigan Correctional Center ("Corrigan") between January 18, 2021 and March 10, 2021.  *Id.* ¶ 15.  During that time, he filed only inmate request forms; he did not file any grievances.  *Id.* ¶¶ 15-16.

Correctional records show that the first grievance received from the plaintiff relating to the February 19, 2021 search was dated April 20, 2021.  *Id.* ¶ 18.  On May 24, 2021, the level 1 grievance was rejected as untimely.  *Id.* ¶ 19.  The plaintiff did not file a timely grievance appeal.  *Id.* ¶ 20.  The plaintiff filed his only level 2 grievance appeal relevant to this case after he was transferred to MacDougall-Walker Correctional Institution on June 3, 2021.  *Id.* ¶¶ 21-23.  On July 30, 2021, the level 2 grievance appeal was rejected as untimely.  *Id.* ¶ 24.  The plaintiff then submitted a level 3 grievance appeal, which was rejected in a letter dated August 27, 2021.  *Id.* ¶ 25-27.

### IV.     Discussion

The defendants move for summary judgment on the ground that the plaintiff failed to exhaust his administrative remedies before commencing this action.

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear his case.  *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

The requirement for proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *Jones*, 549 U.S. at 217-18 (citing *Woodford*, 548 U.S. at 93-95). In addition, exhaustion of administrative remedies must be completed before the inmate files suit. *Baez v. Kahanowicz*, 278 F. App'x 27, 29 (2d Cir. 2008). Completing the exhaustion process after the complaint is filed does not satisfy the exhaustion requirement. *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001).

Special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust

4

those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation marks and internal citations omitted).

The *Ross* Court identifies three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643-44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643. The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the court is guided by these illustrations. *See Mena v. City of New York*, No. 13-CV-2430(RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016). Once the defendant has shown that a grievance procedure exists and applies to the underlying dispute, the plaintiff bears the burden of showing that the identified grievance procedure was unavailable under *Ross*. *Hubbs v. Suffolk County Sheriff's Dept.*, 788 F.3d 54, 59 (2d Cir. 2015).

Exhaustion of administrative remedies is an affirmative defense. Thus, the defendants bear the burden of proof. *See Jones*, 549 U.S. at 216. Once the defendants establish that administrative remedies were not exhausted before the inmate commenced the action, the plaintiff must establish that administrative remedy procedures were not available to him under

*Ross*, or present evidence showing that he did exhaust his administrative remedies. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) ("once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability").

The general inmate grievance procedure is set forth in Administrative Directive 9.6. *See* Defs.' Mot. Ex. 1, Attachment 1, ECF No. 27-3 at 12-25 (version of Directive 9.6 in effect at the time of the underlying incident). An inmate must first attempt to resolve the matter informally. He may attempt to verbally resolve the issue with an appropriate staff member or supervisor. Dir. 9.6(6)(A). If attempts to resolve the matter verbally are not effective, the inmate must make a written request using a specified form and send the form to the appropriate staff member or supervisor. *Id.* If an inmate does not receive a response to the written request within fifteen business days, or the inmate is not satisfied with the response to his request, he may file a Level 1 grievance. Dir. 9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *Id.* The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. Dir. 9.6(6)(I).

The inmate may appeal the disposition of the Level 1 grievance by the Unit Administrator, or the Unit Administrator's failure to dispose of the grievance in a timely manner, to Level 2. The Level 2 appeal of a disposition of a Level 1 grievance must be filed within five

calendar days from the inmate's receipt of the decision on the Level 1 grievance. The Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within sixty-five days from the date the Level 1 grievance was filed by the inmate and is decided by the District Administrator. *See* Dir. 9.6(6)(b)(ii),[2] Defs.' Mot. Ex. 1, Attachment 2, ECF No. 27-3 at 27-39 (current version of Directive 9.6, effective April 30, 2021).

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure, or Level 2 appeals to which there has been an untimely response by the District Administrator. Dir. 9.6(6)(b)(iii).

The only claim in this case is a Fourth Amendment privacy claim based on the strip-search in the presence of a female officer. The search occurred on February 19, 2021. The plaintiff was immediately aware of the alleged improprieties with the search. Thus, he had thirty calendar days, until March 21, 2021, to file a grievance.

The defendants have submitted the Declaration of Nicholas Jacaruso, the Administrative Remedies Coordinator at Corrigan. Defs.' Mo. Ex. 1. He states that the administrative remedy records show that the plaintiff filed one level 1 grievance and one level 2 grievance appeal. Both were denied as untimely filed. *Id.* ¶¶ 26-27. The grievance log shows that the level 1 grievance was received on May 5, 2021 and rejected on May 24, 2021. The level 2 appeal was received on June 29, 2021 and rejected on July 30, 2021. *Id*. at 49.

The plaintiff signed the level 1 grievance on April 20, 2021. In it, the plaintiff states that this is his second grievance regarding the strip search. He states that he filed the first grievance

---

[2] The Court cites both the version of Directive 9.6 in effect at the time of the underlying incident and when the plaintiff filed his grievance, and the revised version in effect when the plaintiff filed his appeals.

on March 9, 2021, but never received a response. *See* Defs.' Mot. Ex. 4, ECF No. 27-6, at 4. However, at his deposition, the plaintiff testified that he while he was confined at Corrigan, between January 18, 2021 and March 10, 2021, he only filed inmate requests. *See* Defs.' Mot. Ex. 7, ECF No. 27-9 at 10. Thus, it is not clear whether the plaintiff filed one or two grievances regarding the search.

The plaintiff dated his level 2 grievance May 31, 2021. In it, he again references the March 9, 2021 grievance but notes that this is his first appeal. The reviewer rejected the appeal as untimely filed, noting that the plaintiff had provided a false date on the form as he indicated his housing unit as MWCI-B2 but was not transferred to MacDougall-Walker Correctional Institution until June 3, 2021. *See* Defs.' Mot. Ex. 5, ECF No. 27-7, at 3. At his deposition, the plaintiff stated that he had prepared, and presumably dated, the form before he was transferred but did not add the housing unit until he was able to submit the form. ECF No. 27-9 at 17-18.

The plaintiff did not comply with the grievance procedures. If the plaintiff did file a level 1 grievance on March 9, 2021 and did not receive a response, his recourse was to file a level 2 appeal within sixty-five days from the date he filed the level 1 grievance, or by May 13, 2021. He did not file, or even date, his level 2 grievance by that date. If the plaintiff's first grievance was the April 20, 2021 grievance, it is untimely as the level 1 grievance must be filed within thirty days from the date of the occurrence, or by March 21, 2021.

In response to this evidence showing failure to properly exhaust administrative remedies, the plaintiff is required to show either that administrative remedies were not available to him or that he did exhaust his administrative remedies. The plaintiff has not done so. Accordingly, the defendants' motion for summary judgment is granted on the ground that the plaintiff failed to

exhaust his administrative remedies on the remaining claim.

## V.     Conclusion

The defendants' motion for summary judgment [**ECF No. 27**] is **GRANTED**.  The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 5th day of May 2023 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge